AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | | |
|---|---|---|
| Richard Bishop, et. al. | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. |
| National Football League | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* National Football League
280 Park Avenue
New York, NY 10017
c/o Douglas Burns, Esquire
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
1285 Avenue of the Americas
New York, NY 10019

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Larry E. Coben, Esquire
Sol H. Weiss, Esquire
ANAPOL SCHWARTZ
1710 Spruce Street
Philadelphia, PA 19103

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: ____________________

____________________
*Signature of Clerk or Deputy Clerk*

Civil Action No.

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))***

This summons for *(name of individual and title, if any)* ______________________
was received by me on *(date)* ______________ .

❒ I personally served the summons on the individual at *(place)* ______________________
______________________ on *(date)* ______________ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* ______________
______________________ , a person of suitable age and discretion who resides there,
on *(date)* ______________ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* ______________________ , who is
designated by law to accept service of process on behalf of *(name of organization)* ______________
______________________ on *(date)* ______________ ; or

❒ I returned the summons unexecuted because ______________________ ; or

❒ Other *(specify)*:

My fees are $ __________ for travel and $ __________ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________
*Server's signature*

______________________
*Printed name and title*

______________________
*Server's address*

Additional information regarding attempted service, etc:

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Richard Bishop, et. al.

**DEFENDANTS**
National Football League

(b) County of Residence of First Listed Plaintiff: Florida
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: New York
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Larry E. Coben, Sol H. Weiss
ANAPOL SCHWARTZ
1710 Spruce Street, Philadelphia, PA, 19103, Telephone: 215-735-1130

Attorneys *(If Known)*
Douglas Burns, Esquire
PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP, 1285 Avenue of the Americas, New York, NY 10019, Phone: 212-373-3403

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☒ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC § 1711 and 28 USC § 1332

Brief description of cause:
other personal injury; fraudulent concealment, negligence, medical monitoring, civil conspiracy,

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE The Honorable Anita Brody DOCKET NUMBER 2:11cv05209AB & MDL 2323

DATE: 05/28/2014
SIGNATURE OF ATTORNEY OF RECORD: Sol H Weiss

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

JS 44 Reverse (Rev. 12/12)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: Richard Bishop, et al-Miami, Florida

Address of Defendant: National Football League-New York

Place of Accident, Incident or Transaction: ______

(*Use Reverse Side For Additional Space*)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)) Yes☐ No☒

Does this case involve multidistrict litigation possibilities? Yes☒ No☐

*RELATED CASE, IF ANY*:
Case Number: 2:11-cv-05209AB and MDL-2323 Judge The Honorable Anita Brody Date Terminated: n/a

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes☐ No☒
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes☐ No☒
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court? Yes☐ No☒
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify) ______

B. *Diversity Jurisdiction Cases*:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☒ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) Civil Conspiracy, Medical Monitoring, Fraudulent Concealment,negligence

## ARBITRATION CERTIFICATION

(*Check Appropriate Category*)

I, Sol H. Weiss, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

**DATE:** 05/28/2014 [signature] Attorney-at-Law ID # 15925 Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.**

**DATE:** 05/28/2014 [signature] Attorney-at-Law ID # 15925 Attorney I.D.#

CIV. 609 (5/2012)

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: Richard Bishop, et al-Miami, Florida

Address of Defendant: National Football League-New York

Place of Accident, Incident or Transaction: ______

(*Use Reverse Side For Additional Space*)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a)) Yes☐ No☒

Does this case involve multidistrict litigation possibilities? Yes☒ No☐

*RELATED CASE, IF ANY*:
Case Number: 2:11-cv-05209AB and MDL-2323 Judge The Honorable Anita Brody Date Terminated: n/a

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes☐ No☒
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes☐ No☒
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court? Yes☐ No☒
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify) ______

B. *Diversity Jurisdiction Cases*:
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☒ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) Civil Conspiracy, Medical Monitoring, Fraudulent Concealment,negligence

## ARBITRATION CERTIFICATION

(*Check Appropriate Category*)

I, Sol H. Weiss, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 05/28/2014 [signature] Sol H Weiss ID # 15925
Attorney-at-Law Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.**

DATE: 05/28/2014 [signature] Sol H Weiss ID # 15925
Attorney-at-Law Attorney I.D.#

CIV. 609 (5/2012)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Richard Bishop, et al. | : | CIVIL ACTION |
| v. | : | |
| NATIONAL FOOTBALL LEAGUE | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( )

| | | |
|---|---|---|
| 05/28/2014 | Sol H Weiss | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-735-1130 | 215-875-7719 | sweiss@anapolschwartz.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a) The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b) In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c) The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d) Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e) Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RICHARD BISHOP, ETHAN JOHNSON, CHRIS DUGAN, ANTHONY GRANT, MARK GREEN, LACURTIS JONES, JOHN HUDDLESTON, ERIK AFFHOLTER, TODDRICK MCINTOSH, DWIGHT WHEELER, JACKIE WALLACE, DAN MARINO, MOSES MORENO, PETER MANNING and his wife SUSIE MANNING, and BRUCE CLARK,<br><br>**PLAINTIFFS,**<br><br>V.<br><br>NATIONAL FOOTBALL LEAGUE,<br><br>**DEFENDANT.** | **COMPLAINT**<br>**CIVIL ACTION NO.**<br><br>**Related to MDL 12-2323**<br><br>In RE: NATIONAL FOOTBALL LEAGUE PLAYERS' CONCUSSION INJURY LITIGATION<br><br>**Related to 11-cv-05209-AB**<br><br>*Easterling, et al. v. National Football League*<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiffs, Richard Bishop, et al., sue Defendant, National Football League (referred to herein as "NFL"), and state as follows:

## NATURE OF THE ACTION

1. This action seeks separate relief for medical monitoring, and seeks compensation and financial recovery for the long-term/chronic injuries, financial losses, expenses and intangible losses suffered by Plaintiffs as a result of Defendant's carelessness, negligence, intentional misconduct and concealment of information directly related to each Plaintiff's injuries, risk of injury and losses. This action further seeks to recover fair compensation for the spouses of certain Plaintiffs listed in this Complaint, based upon their right to seek loss of consortium.

2. For over 40 years, and up until the August 4, 2011 Collective Bargaining Agreement with the NFL Players' Association was executed, Defendant and its designated representatives, have continuously and fervently denied that it knew, should have known or believed there to be any relationship between NFL players suffering concussions while playing, the NFL policies concerning tackling methodology or the NFL policies about return-to-play, and long-term physical, neurological, mental and cognitive problems, such as headaches, dizziness, amyotrophic lateral sclerosis (ALS – a/k/a Lou Gehrig's Disease), dementia and/or Alzheimer's disease, impulse control, anger issues, confusion, depression and/or other neurogenic disorders that many players have experienced.

3. These aforementioned denials have been stated in NFL publications, so-called medical studies sponsored by the NFL, testimony of NFL representatives before Congress and statements made to the media in response to reports suggesting a causal connection between concussions and bodily injury.

4. For more than 100 years, literature available to the public has posited that traumatic head injuries have a causal connection with many symptoms associated with, and leading to a diagnosis of, ALS. ALS is a disease characterized by a degeneration of the neurons in the brain. Published literature has reported that repeated head trauma is a significant risk factor for neurodegenerative processes, including ALS. The incidence and mortality of ALS is statistically higher in athletes who suffer repeated head trauma.

5. In the early 1970s, the NFL became aware of published materials accounting for the rate and seriousness of concussions in the sport of football. Also in the early 1970's, the NFL became aware of the publication of a helmet standard, known as the NOCSAE (National

Operating Committee on Standards for Athletic Equipment) for football helmets, and which was intended to improve the safety of helmets while minimizing the risk of head injury. At the same time, the NFL learned that the NCAA (National Collegiate Athletic Association) and the (NHSFF) National High School Football Federation had both adopted a policy of requiring (beginning in 1978) that all helmets used in their organizations must be approved for sale and comply with the NOCSAE standard. The NFL did not adopt a similar policy at that time.

6. Rule makers in the NCAA and NHSFF in the early 1970s recognized that the helmet-facemask combination was contributing to the use of the "protected" head being employed as an offensive weapon. That, in turn, was increasing the incidence of concussions. In 1976, both organizations initiated changes which prohibited initial contact of the head in both blocking and tackling. Also aware of these changes in the rules, and the risks of harm, the NFL failed to take similar action.

7. In 1979, the NFL instituted a rule, with an accompanying (albeit inadequate) penalty, for players who were found to have used their helmets to butt, spear or ram an opponent with the crown or top of the helmet. Although done, presumably because of the duty of care owed to the players, the action fell short of the necessary preventative measures that should have been in place years prior to protect the NFL's players. The NFL rule came many years after similar rules were adopted by the NCAA and NHSFF, both of whom recognized the risk of spinal cord injury while engaging in football.

8. The NFL's 1979 rule ignored the more prevalent practices in the NFL that directly caused a significantly higher rate of concussions amongst its players. During the 1970s, 1980s and 1990s, NFL players were coached, encouraged, trained and motivated to use all portions of their

helmets for blocking, tackling, butting, spearing, ramming and/or injuring their opponents by hitting them with their helmeted-heads. These practices were condoned by the NFL and/or not specifically and significantly condemned by the NFL, despite Defendant's awareness that these practices were increasing the risk of causing concussions among its players.

9. Another NFL rule change in 1989 gave referees the authority to eject a player who was observed using his helmet in the manner described in paragraph 8. However, this rule was not strictly enforced by the league. The NFL wanted to keep its fan base excited by the visual exhilaration witnessing such hazardous techniques created for the spectators.

10. Despite the NFL's knowledge of such dangerous practices and the increased risk of head injury to the players, the NFL turned a blind eye for decades, and allowed the players to be coached, trained and/or motivated to use any and all portions of their helmets to block, tackle, butt, spear, ram and/or injure opposing players with their helmeted heads. In fact, in 1996, the NFL promulgated a rule making it a personal foul with potential fines attached, to hit with the helmet. However, the purpose behind the rule was to protect the league's quarterbacks, not to protect all players from head injury caused by dangerous use of the players' helmets. This evidenced a complete lack of regard for the players' safety and the risk of injury. It demonstrated Defendant's selfish desire to keep the fan base entertained and interested in the violence of the sport of football.

11. The high incidence of concussions among NFL players has been known to the NFL since the early 1970s. Defendant had knowledge – through its supervisory capacity and management role, and through studies it paid for (as set forth more particularly in paragraph 15) – that a

history of multiple concussions has been associated with players' increased risk of future brain deficits.

12. Since the early 1970s, Defendant has known or had reason to know, by way of its supervisory and management roles, that NFL players suffering repeated concussions were more likely to experience evolving symptoms of post-traumatic brain injury including headaches, dizziness, memory loss, impulse control problems, Chronic Traumatic Encephalopathy (CTE), dementia, ALS, Alzheimer's disease, etc. Even armed with this knowledge, until August 4, 2011, Defendant continued to deny any connection or correlation between players suffering concussions and long-term chronic brain injury or illness.

13. The NFL has actively concealed and/or aggressively disputed any causal connection between concussions in NFL football and brain injury or illness.

14. Defendant failed to act reasonably, given the critical knowledge it had, to institute appropriate means to identify the at-risk players, to set forth guidelines or to institute rules concerning return-to-play criteria in order to combat the devastating effects of helmeted-head techniques. Because of the glaring breach of duty, Defendant increased the risk of long-term injury and illness to its players.

15. As part of the NFL's ongoing cover up and denial of any causal link between concussions and long-term health consequences, Defendant disputed the findings of a scientific study that Defendant actually funded. On September 30, 2009, newspaper accounts were published detailing a study (unreleased) commissioned by the NFL to assess the health and wellbeing of its retired players. The study found that retired players reported being diagnosed with dementia and other memory-related diseases at a rate much higher than that of the general population.

Specifically, the study found that 6.1 percent of retired NFL players age 50 or older reported being diagnosed with dementia, Alzheimer's disease and other memory related illnesses, compared with 1.2 percent for all comparably aged men in the United States. Despite the findings of this study, Defendant was quick to dispute the findings and continue with its mantra that there is no evidence connecting concussions, concussion-like symptoms, NFL football and long-term brain injury or illness.

16. For many decades before June of 2010, Defendant voluntarily and repeatedly made material misrepresentations to its players, former players, the United States Congress, and the public at large that there was no link (or an insufficient scientific link) between repetitive traumatic head impacts and/or concussions and later in life cognitive/brain injury, including CTE and its related symptoms.

17. As a result of Defendant's material misrepresentations and continuing concealment, the Plaintiffs did not have a reasonable basis to know of a relationship between the misconduct of Defendant and the players' respective neuro-cognitive symptoms, or the potential for problems in the future, before July/August 2011.

18. Between the early 1970s and sometime after September 30, 2009, the NFL ignored repeated warnings, and patterns of injury, that only it was privy to in its management capacity. That information was concealed by Defendant – information concerning the devastating effects that on-the-field concussions, and the NFL's own return-to-play policies, were having on the players in terms of causing lasting, chronic mental defects and brain injuries.

19. Over the past 4 decades, Defendant has actively concealed and aggressively disputed any correlation between on the field concussions, its own return-to-play policies and the chronic

mental illnesses and physical maladies suffered by its players. During those same decades, the NFL disputed and actively sought to suppress the findings of others that there is a connection between on-field head injury and post-career mental/physical illnesses.

20. Despite its knowledge of the grave risks that players have been exposed to because of Defendant's gross inaction and/or concealment of safety information, Defendant carelessly failed to take reasonable measures to develop appropriate and necessary steps to alert players to their risks of debilitating long-term illnesses.

21. Despite its knowledge of the grave risks that players have been exposed to because of Defendant's gross inaction and/or concealment of safety information, Defendant carelessly failed to take reasonable steps to develop appropriate and necessary guidelines for return-to-play following a concussion. These omissions either caused or increased the likelihood that Plaintiffs would suffer repeated concussions and long-term injury, illness and/or disability.

22. Defendant's relationship with Plaintiffs included a scheme to conceal information and facts it knew regarding the risks of long-term injuries/illnesses associated with players suffering concussions, the inappropriate time to return-to-play and other gross errors set forth herein.

23. Defendant failed to establish proper and adequate methodology to monitor and detect when players suffer concussive or sub-concussive injuries in practice or game play. This failure increased the risk of injuries that have materialized (see referenced above) or will materialize in the future.

## JURISDICTION AND VENUE

24. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 and other pertinent federal statutes. The amount in controversy is greater than the minimum dollar value required by law.

25. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a)(2) and 1391 (b)(2) as a substantial part of the events and/or omissions giving rise to the claims emanated from activities within this jurisdiction and Defendant conducts substantial business in this jurisdiction.

## PARTIES

26. Plaintiff, Richard Bishop, is an individual residing in Miami, FL. Mr. Bishop played in the NFL from 1976-1983.

27. Plaintiff, Ethan Johnson, is an individual residing in Chicago, IL. Mr. Johnson played in the NFL from 2012-2013,

28. Plaintiff, Chris Dugan, is an individual residing in Indianapolis, IN. Mr. Dugan played in the NFL from 1991-1993.

29. Plaintiff, Anthony Grant, is an individual residing in Madison, AL. Mr. Grant played in the NFL in 1987.

30. Plaintiff, Mark Green, is an individual residing in Mundelein, IL. Mr. Green played in the NFL from 1989-1992.

31. Plaintiff, LaCurtis Jones, is an individual residing in Waco, TX. Mr. Jones played in the NFL in 1996.

32. Plaintiff, John Huddleston, is an individual residing in Celina, TX. Mr. Huddleston played in the NFL from 1978-1979.

33. Plaintiff, Erik Affholter, is an individual residing in Anthem, AZ. Mr. Affholter played in the NFL in 1991.

34. Plaintiff, Toddrick McIntosh, is an individual residing in Pembroke Pines, FL. Mr. McIntosh played in the NFL from 1994-1995.

35. Plaintiff, Dwight Wheeler, is an individual residing in Goodlettsville, TN. Mr. Wheeler played in the NFL from 1978-1984 and from 1987-1988.

36. Plaintiff, Jackie Wallace, is an individual residing in Harvey, LA. Mr. Wallace played in the NFL from 1974-1979.

37. Plaintiff, Dan Marino, is an individual residing in Fort Lauderdale, FL. Mr. Marino played in the NFL from 1983-1999.

38. Plaintiff, Moses Moreno, is an individual residing in Chula Vista, CA. Mr. Moreno played in the NFL from 1998-2000.

39. Plaintiff, Peter Manning and his wife, Susie Manning, are individuals residing in Worcester, MA. Mr. Manning played in the NFL from 1960-1961.

40. Plaintiff, Bruce Clark, is an individual residing in State College, PA. Mr. Clark played in the NFL from 1982-1989.

**COUNT I**
**FRAUDULENT CONCEALMENT**

41. Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

42. Defendant concealed facts and information which caused all Plaintiffs to become exposed to the harm referenced previously in this Complaint.

43. As a proximate cause of the concealment by Defendant, each Plaintiff was caused to suffer harm described previously herein, each has suffered damages that are continuing in nature, or may suffer damages, and all damages have yet to be fully realized.

44. WHEREFORE, Plaintiffs hereby demand from Defendant an amount to be determined at trial, plus interest and costs.

**COUNT II**
**CIVIL CONSPIRACY**

44. Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

45. Defendant actively, aggressively and deliberately conspired with its team members and/or independent contractors who were directed to continuously discount and reject the causal connection between multiple concussions suffered while playing in the NFL, a non-scientific return-to-play policy for players suffering concussions and the chronic long-term effects of those head injuries.

46. This conduct between Defendant and the other team members was a proximate cause of the chronic injuries, illnesses and damages suffered by Plaintiffs.

47. WHEREFORE, Plaintiffs hereby demand damages from Defendant in an amount to be determined at trail, plus interest and costs.

**COUNT III**
**NEGLIGENCE**

48. Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

49. Defendant assumed a duty toward its players, including Plaintiffs, to supervise, regulate, monitor and provide reasonable and appropriate rules and guidelines aimed to minimize injury to the players.

50. Defendant acted carelessly and negligently in its position as the regulatory body for all the team members. Defendant knew or should have known that its actions, or inactions, in light of the rate and extent of concussions reported in the NFL, would cause harm in both the short and long-term to its players.

51. Defendant was generally careless, reckless and negligent by breaching the duty of due care it had assumed for the players, including Plaintiffs. Further, Defendant was careless, reckless and negligent in the following particular ways:

a. Failing to warn of the risk of unreasonable harm resulting from repeated concussions;

b. Failing to disclose the special risks of long-term complications from repeated concussions and return-to-play;

c. Failing to disclose the role that repeated concussions have in causing chronic long-term cognitive decline and deficiency;

d. Failing to institute rules and regulations to adequately address the dangers of repeated concussions and a return-to-play policy to minimize long-term chronic cognitive problems;

e. Misrepresenting pertinent facts that players needed to be aware of to make decisions concerning their own safety with respect to return-to-play;

f. Concealing pertinent facts and information;

g. Failing to adopt rules and effectively and reasonably enforce those rules to minimize the risk of players suffering debilitating concussions; and

h. Other acts of negligence, recklessness and/or carelessness that may materialize during the pendency of this action.

## COUNT IV
## DAMAGES – FOR THE INJURED PLAYERS AND THEIR SPOUSES

52. Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

53. Certain named Plaintiffs have suffered past medical problems, and will in all likelihood incur future medically related costs associated with the harm suffered and injuries/illnesses referenced herein.

54. Certain named Plaintiffs have suffered a loss of earnings, and may in the future suffer a loss of earnings capacity associated with the harm suffered and injuries/illnesses referenced herein.

55. Certain named Plaintiffs have suffered in the past from an assortment of problems associated with the harm and injuries described herein, including, but not limited to, headaches, dizziness, loss of memory, dementia, depression, impulse control, impulsivity to anger, cognitive dysfunction, employment impairment, physical activity limitations, embarrassment, loss of the pleasures of life, etc.

56. As a result of the foregoing, certain named Plaintiffs have suffered actual damages and will continue to suffer in the future, because of Defendant's misconduct. Plaintiffs are entitled to damages in an amount to be determined at trial.

57. Pursuant to common law, Plaintiff-Spouses seek to recover, and are entitled to recover, for loss of consortium, loss of services, both past and future, for the harm to their relationship with their husband-players.

**COUNT V**
**DAMAGES**

58. Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

59. Certain named Plaintiffs have suffered past medical problems, and will in all likelihood incur future medically related costs associated with the harm suffered and injuries/illnesses referenced herein.

60. Certain named Plaintiffs have suffered a loss of earnings, and may in the future suffer a loss of earnings capacity associated with the harm suffered and injuries/illnesses referenced herein.

61. Certain named Plaintiffs have suffered in the past from an assortment of problems associated with the harm and injuries described herein, including, but not limited to, headaches, dizziness, loss of memory, dementia, depression, impulse control, impulsivity to anger, cognitive dysfunction, employment impairment, physical activity limitations, embarrassment, loss of the pleasures of life, etc.

62. As a result of the foregoing, certain named Plaintiffs have suffered actual damages and will continue to suffer in the future, because of Defendant's misconduct. Plaintiffs are entitled to damages in an amount to be determined at trial.

## COUNT VI
## MEDICAL MONITORING

63. Plaintiffs adopt and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

64. Plaintiffs have been exposed to a greater risk of concussions and sub-concussions, which then have increased their risk of suffering long-term injuries and illnesses as set forth above.

65. Plaintiffs, some of whom have yet to begin to evidence the long-term physical and mental effects of Defendant's misconduct, require specialized testing that is not generally given to the public at large, for the early detection of the long-term effects of concussions and sub-concussions.

66. The available monitoring regime is specific for individuals exposed to concussions and sub-concussions, and different from that normally recommended in the absence of exposure to this risk of harm.

67. The available monitoring regime is reasonably necessary according to modern scientific principles and those within the medical community who specialize in close head injuries, and their connection to memory loss, early onset dementia, ALS, CTE and Alzheimer's-like diseases.

68. By monitoring and testing Plaintiffs who are suspected to have suffered concussions or sub-concussions, or who will suffer from same in the future, it can be determined whether each player is sufficiently healthy to return-to-play and/or it will significantly reduce each player's risk of developing long-term injuries, diseases and losses described herein.

69. Until now Defendant has failed to properly, reasonably and safely monitor, test or otherwise study whether, and when, a player has suffered a concussion or sub-concussion, to minimize the risk of long-term injury and illness, medical monitoring is the most appropriate method by which to determine whether a Plaintiff is now at risk.

70. Accordingly, Defendant should be required to establish a medical monitoring program that includes, *inter alia*:

a. Establishing a trust fund, in an amount to be determined, to pay for the medical monitoring of Plaintiffs;

b. Notifying the Plaintiffs in writing regarding the specific regime recommended, and the need for, and importance of, frequent medical monitoring; and

c. Providing information to treating team physicians, other physicians and team members to aid them in detecting concussions and sub-concussions, and to assist them in determining when the player is subjected to an increased risk of harm.

71. Medical monitoring is appropriate because: (1) the exposure to concussions and sub-concussions, and their related ramifications, are greater than normal background levels; (2) the harm was the result of the creation of subpar techniques and/or the failure to create proper and/or adequate techniques; (3) which were promoted or the direct result of Defendant's failure to institute and follow safety policies it knew or should have known about; (4) as a proximate result of the exposure to the aforementioned harm, Plaintiffs have an increased risk of developing serious and potentially life-threatening latent neurogenic disease processes caused by head trauma; (5) a monitoring procedure exists to detect evolving neurogenic deficits including, but not limited to, dementia, permanent memory loss and other life altering diseases and illnesses; (6) the prescribed monitoring regime is different from that normally recommended in the absence of exposure; and (7) the prescribed monitoring regime is reasonably necessary according to scientific principles and according to those within the medical community who specialize in close head trauma.

## PRAYER FOR RELIEF

72. WHEREFORE, Plaintiffs (and their spouses, where applicable) pray(s) for judgment as follows:

A. An award of compensatory damages, the amount of which will be determined at trial;

B. For punitive and exemplary damages, as applicable;

C. For all applicable statutory damages of the state whose laws will govern this action;

D. For medical monitoring, whether denominated as damages or in the form of equitable relief;

E. For an award of attorneys' fees and costs;

F. An award of prejudgment interest and costs of suit; and

G. An award of such other and further relief as the Court deems just and proper.

**JURY DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury.

Signed this 28th day of May, 2014.

Larry E. Coben, Esquire (ID #17523)

Sol H. Weiss, Esquire (ID #15925)

*Attorneys for the Plaintiffs*
ANAPOL SCHWARTZ
1710 Spruce Street
Philadelphia, PA 19103
Telephone: 215.735.1130

**CERTIFICATE OF SERVICE**

I, Sol H. Weiss, Esquire, hereby certify that on this 28th day of May, 2014, the foregoing was filed with the Clerk of the United States District Court for the Eastern District of Pennsylvania. I hereby certify that all counsel of record were provided notice of this filing pursuant to the Court's electronic filing system.

Dated: May 28, 2014

Sol H Weiss

Sol H. Weiss, Esquire (ID #15925)
ANAPOL SCHWARTZ
1710 Spruce Street
Philadelphia, PA 19103
Telephone: 215.735.1130
*Attorneys for Plaintiffs*